IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE MARTIN PRICE, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-3015 |
| | : | |
| FEDERAL BUREAU OF | : | |
| INVESTIGATION, *et al.*, | : | |
| *Defendants.* | : | |

## MEMORANDUM

**PAPPERT, J.**                                                                 **JULY 30, 2020**

Plaintiff Maurice Martin Price brings this civil action against numerous defendants including, *inter alia*, the Federal Bureau of Investigation, Pennsylvania Office of Attorney General, Pennsylvania State Police, Berks County District Attorney Office, Berks County Detective, Berks County Juvenile Parole and Probation, Berks County Prison, Berks County Prison Psychology Department, Philadelphia District Attorney Office, Pennsylvania Parole Board, Pennsylvania Department of Corrections, Reading School District, Potomac Job Corps, several attorneys, and numerous prison officials at SCI Graterford, SCI Greene, and SCI Phoenix, as well as medical professionals who treated him at those facilities. In fact, Price has named more than eighty different entities and individuals as Defendants, even naming himself as a "soul creation of all the defendants." Price seeks leave to proceed *in forma pauperis* and has filed a motion for appointment of counsel. For the following reasons, the Court will grant Price leave to proceed *in forma pauperis*, dismiss his Complaint with prejudice as factually baseless, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and deny his motion for appointment of counsel.

1

I[1]

Price asserts that his Complaint contains two sections, with the first section addressing allegations ranging from June 28, 1978 through June 28, 1996 and the second section addressing allegations ranging from June 29, 1996 through the present. (ECF No. 3-3 at 15.)[2]  The theme underlying Price's Complaint, which consists of sixty-seven single-spaced pages and several attached exhibits, is that the named Defendants "used experimentation neurological and psychological mind altered technology" to control Price's "four basic groups of his brain and mental functions." (*Id.* at 19-22, 26-33, 39, 42, 45-46, 48-57, 59-61.)  The Court has reviewed Price's submission in its entirety but will not recount all of his allegations here as they are lengthy and detailed.

Price avers that certain named Defendants from June 28, 1978 through June 28, 1996 "without no prior County, State or Federal Government approved Court order or [Price's] parent consent . . . unlawfully continually used experimentation neurological and psychological mind altered technology to control all of [his] four basic groups of his brain and mental functions" which caused him to suffer psychological disabilities, learning disabilities, memory impairment, delusional disorder, neurological impairments, antisocial personality disorder, criminal behavior, alcoholism disabilities, and defense mechanism disabilities during his childhood. (*Id.* at 19.)  Price avers that the Defendants used "said technology throughout [his] childhood and teenager school years causing [him] not to protect himself" which led to him being "continuously bullied

---

[1] The following allegations are taken from the Complaint and the exhibits attached to the Complaint.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

for years" and "suspended from school" eventually causing him to obtain a juvenile record. (*Id.* at 19-20.) Price further avers that he dropped out of high school and while he was in the Potomac Job Corps, the federal government "join[ed] in the neurological and psychological technological surveillance" on him. (*Id.* at 20.) Defendants "mind control[ed]" Price to quit school and the "technology" used by Defendants led to him to commit a crime on May 31, 1996, which led to his incarceration at the Berks County Prison. (*Id.*) Defendants used "neurological and psychological coercion technology" and "mind control" on him at trial causing him to "waive his trial rights . . . accept a guilty plea abandoning his defense," and "blurt out 'guilty.'" (*Id.*)

Price further avers that following his release from Berks County Prison on June 17, 1997, the "Defendants neurological and psychological mind control technology . . . still impaired all of the [four] basic groups of [his] brain and mental functions which [overrode his] birth natural normal mental and physical state" resulting in the following adult impairments: learning disabilities, psychological disabilities, delusional disorders, memory impairments, neurological impairments, antisocial personality disorder, and behavior difficulties. (*Id.* at 21.) Defendants continued use of "mind control" and "the experimentation neurological and psychological mind controlled technology" turned Price into a "hypothetical-person." (*Id.*) Defendants alleged experimentation altered Price's mind, which "impaired and controlled [him] to abandon his employment" and "made him return to a life of crime." (*Id.*) Defendants also "continued to use said technology" on Price's family, including his newborn children during criminal proceedings initiated in January 2002. (*Id.*)

Price avers, *inter alia*, that the Defendants use of neurological and psychological mind control has caused him to:

- refuse a shower because he had a woman breast and was too fat (*id.* at 22, 31);
- think he could read the minds of his fellow inmates and family (*id.*);
- be assaulted by other inmates (*id.* at 22, 24);
- believe that he had a bullet in the base of his neck and brain (*id.* at 22);
- say unremorseful words during sentencing (*id.* at 24);
- be denied outgoing mail and real phone calls (*id.* at 26);
- be unable to memorize the religious teachings of Islam (*id.*);
- have visions of friends being murdered; (*id.* at 26)
- attend a creative writing course and write seven novels (*id.* at 27);
- quit college (*id.* at 30); and
- agree to start selling narcotics (*id.*).

Price avers that the Defendants, beginning in November 2012, used "mind control" when he conducted his first narcotic transaction. (*Id.* at 31.) He further avers that Defendants "provided all means and avenues and money sources for [him] to conduct his illegal activities." (*Id.*)

Defendants also allegedly used "neurological and psychological technology to create inadequate and unsanitary housing" while he was incarcerated at Berks County Prison, SCI Graterford, SCI Greene, and SCI Phoenix. (*Id.*) Price asserts that the technology made him skip showers (*id.* at 32), drink human wastewater out of the toilet (*id.*), denied him adequate telephone access (*id.* at 33-37), and denied him access to incoming and outgoing correspondence (id. at 37-39). Defendants also used neurological and psychological technology to make Price believe that his "cell mate was copying his personal information," resulting in him ripping up all of his personal information and causing him to have no memory of his family's information or addresses. (*Id.* at 39.)

Price further avers that the Defendants used the aforementioned technology to violate the "religious land used and institutionalize persons act" resulting in an

4

inadequate opportunity to practice religion. (*Id.* at 41-42.) The technology used allegedly prevented Price from memorizing and reciting his prayers, caused him to hate the Berks County Prison Islam Imam, and made him hallucinate during obligatory Islamic services, thereby preventing him from understanding the services. (*Id.* at 42.) Moreover, he asserts than when the "Defendants continued to use neurological and psychological technology," they changed his "point of view and emotions toward Islam" and made him watch Christianity channels for hours a day until he disowned Islam and accepted Christianity as his religion. (*Id.* at 42.) Price avers that the Defendants neurologically placed him "in a trancing state for weeks at a time making him read the bible verses out loud and workout thinking someone was trying to murder his family and him." (*Id.* at 43.)

Price asserts that the Defendants have "used neurological and psychological technology and manipulation on [him] to completely [deny him] visitation with family, friends and attorneys" during his entire period of incarceration. (*Id.* at 45.) Price also avers that the Defendants used "technology and manipulation" on his brain "to accept visitation from people that had similar features as [his] family." (*Id.* at 45-46.) The Defendants also "neurologically impaired" Price's "four basic brain function to argue, threaten and disrespect" his girlfriend when she came to visit him, causing her to cry. (*Id.* at 46.)

In addition to the foregoing, Price avers that the Defendants "used neurological and psychological technology" and "mind control manipulation" to cause him to commit crimes and then, while incarcerated, Defendants continued to manipulate him to plead guilty, waive his rights, and completely deny him access to the law library and the

courts. (*Id.* at 48-56.) Price further asserts that the "technology" made him commit sexual acts while incarcerated at SCI Graterford and SCI Greene (*id.* at 57) and caused him to be placed in a mental health category (*id.* at 59-61).

Based on the above and additional similar allegations, Price seeks compensatory and punitive damages in the amount of $500,000 against each Defendant, a declaration that the acts and omissions described in his Complaint "violated his rights under the Universal Declaration of human rights, State and Federal Constitutions, the Americans with Disabilities Act . . . the Rehabilitation Act . . . the Pennsylvania Department of Corrections [Code] of Ethics . . . the Pennsylvania and Federal Penal Crimes Code Statute . . . [and the] Pennsylvania and Federal Intellectual Property Law." (*Id.* at 67.) Price also seeks "a preliminary and permanent injunction ordering [certain Defendants] to completely and forever cease the unlawful/intrusion use of the Neurological and Psychological mind altered technology that controlled all [of his] four basic groups of his brain and physical functions." (*Id.*)

II

The Court will grant Price leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d

---

[3] However, as Price is incarcerated, he will be obligated to pay the filing fee in installments, pursuant to 28 U.S.C. § 1915(b).

1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). As Price is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III

Price may not proceed on his claims because his allegations are factually baseless. As summarized above, Price asserts that numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the "four basic groups of his brain and mental functions" beginning in June 1978 and continuing through the present. Price alleges that the use of this "technology" and "mind control" has caused him numerous impairments and drove him to criminal and erratic behavior. Overall, his allegations rise to the level of factually frivolous. As these allegations underlie Price's claims, the Court will dismiss Price's Complaint on that basis. *See Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (per curiam) (dismissing appeal as frivolous where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Golden v. Coleman*, 429 F. App'x 73, 74 (3d Cir. 2011) (per curiam) (finding factually frivolous allegations that "various prison employees at the State Correctional Institution in Fayette, Pennsylvania, where [the plaintiff] was formerly incarcerated, violated his constitutional rights by planting 'Government Micro Eye Cameras' in his food and broadcasting images obtained from those cameras on prison television"); *Jorge v. Torres*, Civ. A. No. 18-14674, 2019 WL 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's

factual allegations that the Police are monitoring his every move and that the Police do so by telephone recruitment 'of informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (citing cases)); *Morgan v. Unknown FBI Agents*, Civ. A. No. 16-495, 2016 WL 11586214, at *2-3 (W.D. Tx. May 3, 2016), *report and recommendation adopted*, 2016 WL 11586213 (W.D. Tx. May 31, 2016) (concluding that dismissal as frivolous was warranted under § 1915(e)(2)(B)(i) because *pro se* plaintiff's "Complaint [was] paranoid and delusional . . . [where] [s]he believe[d] that government agents [were] following her, hacking her computer, spying on her with a camera at her home, and implanting devices in her body.").

IV

For the foregoing reasons, the Court will grant Price leave to proceed *in forma pauperis* and dismiss his Complaint.  Price will not be permitted to file an amended complaint because the Court concludes that amendment would be futile.  Price's motion to appoint counsel will be denied.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  An appropriate Order follows, which will be docketed separately.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**